UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE BURLINGTON INSURANCE COMPANY, et al., | Case No:  C 09-00421  SBA |
| Plaintiffs, | **ORDER REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| DEVDHARA, et al., | [Docket 49] |
| Defendants. | |

The parties are presently before the Court on Plaintiffs' Motion for Summary Judgment and/or Partial Summary Judgment.  (Docket 49.)  Having read and considered the papers filed in connection with this matter, and having considered counsel's arguments at the July 14, 2010 hearing, and being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART the motion for the reasons set forth below.

I.      **BACKGROUND**

        A.      THE INSURANCE POLICIES

        Plaintiff The Burlington Insurance Company ("TBIC") issued two commercial general liability insurance policies to Defendants: 1) policy number 157V000851, issued to Defendants Devdhara and Thakor dba Auburn Hotel, covering the policy period 2/28/05 through 2/28/06; and 2) policy number 150B005234, issued to Defendants Devdhara and Thakor, and Auburn Hotel, covering the policy period of 3/2/07 through 3/2/08 ("TBIC Policies").  (Creighan Decl., ¶ 2, Exs. 1, 2.)

        Plaintiff First Financial Insurance Company ("FFIC") also issued two commercial general liability insurance policies to Defendants:  policy number 157F000308, issued to Defendants Devdhara dba Auburn Hotel, covering the policy period 2/28/03 through 2/28/04; and 2) policy number 157F000681, issued to Defendants Devdhara and Thakor dba Auburn

Hotel, covering the policy period of 2/28/04 through 2/28/05 ("FFIC Policies").  (Id., ¶ 3, Exs. 3, 4.)

The TBIC and FFIC Policies (collectively, "the Policies") provided Defendants with liability coverage under the following pertinent provisions:

**SECTION I – COVERAGES**

**COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" or settle any claim or "suit" that may result.  But: …

b.    This insurance applies to "bodily injury" or "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; ….

**2.    Exclusions**

This insurance does not apply to:

**a.    Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**COVERAGE B.  PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.    Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. …

**2.      Exclusions**

This insurance does not apply to:

        a.      Knowing Violation of Rights of Another - "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury." …

**EXCLUSIONS - PUNITIVE DAMAGES**

This insurance does not apply to any claim of or indemnification for punitive or exemplary damages.  If a "suit" seeking both compensatory and punitive or exemplary damages has been brought against you for a claim covered by this policy, we will provide defense for such action.  We will not have any obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

**SECTION V - DEFINITIONS**

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. …

13.      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. …

14.      "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses: …

        c.      <u>The wrongful eviction from</u>, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor. …

17.      "Property damage" means:

        a.      Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        b.      Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(<u>Id</u>., Exs. 1-4) (emphasis added).

**B.    THE UNDERLYING ACTION**

Defendants owned, leased, and managed a residential hotel called "Auburn Hotel" in San Francisco, California.  In August 2007, several tenants of the Auburn Hotel filed a class action lawsuit against Defendants, entitled <u>Wilson, et al. v. Nikita Holding, LLC, et al.</u>, San Francisco Superior Court Case No. CGC-07-466543 ("Underlying Action").  (Pls.' RJN, Ex. 13.)

In that case, the underlying plaintiffs ("Tenants") alleged in their Amended Complaint that Defendants failed to maintain the Auburn Hotel in a habitable manner, and brought the following causes of action: (1) Breach of Implied Warranty of Habitability; (2) Habitability Tort; (3) Nuisance; (4) Breach of Implied Covenant of Quiet Enjoyment; (5) Violation of Civil Code § 1942.4; (6) Negligence; (7) Negligent Violation of Statutory Duty; (8) Injunctive Relief, Civil Code §§ 333, 3422; California Code of Civil Procedure §§ 526, 527; and Civil Code § 1942-4; (9) For Order Restraining Unlawful Business Practices; and (10) Unfair Business Practices - Disgorgement.  (<u>Id</u>., Ex. 14.)  The Tenants did not specifically allege a cause of action for wrongful eviction.  (<u>Id</u>.)

**C.    DEFENDANTS' TENDER AND THE PARTIES' EFFORTS TO SETTLE THE UNDERLYING ACTION**

In February 2008, Defendants tendered the defense of the Underlying Action to TBIC, FFIC, and their third liability carrier, United National Insurance Company ("United").  On June 25, 2008, the Area Claims Manager for both TBIC and FFIC wrote Defendants' personal coverage counsel, Michael Heath, accepting the tender and agreeing to provide a full defense. (Creighan Decl., ¶ 5, Ex. 5.)  In that letter, Plaintiffs advised Defendants of their position that the Underlying Action included no allegations of "bodily injury" or "property damage," or of damages caused by an "occurrence," as defined in the Policies.  (<u>Id</u>., Ex. 5 at 7.)  Plaintiffs also reserved their rights to seek reimbursement from Defendants for some or all of the amount paid by Plaintiffs as defense costs, and some or all of the amount paid by Plaintiffs as settlement of the Underlying Action.  (<u>Id</u>. at 13.) ("FFIC/TBIC reserves its right to seek recovery of the legal

fees and expenses it paid in defense of this matter and to seek reimbursement of any payments made in settlement or judgment related to non-covered claims.").

Defendants accepted the defense provided by Plaintiffs, and permitted appointed panel counsel, Randy Wertz, to represent them in the Underlying Action.  (Creighan Decl., ¶¶ 6-7.) FFIC, TBIC, and United shared equally in the payment of Defendants' defense costs, with each carrier paying one-third.  (Id., ¶ 6.)

During the course of the Underlying Action, Plaintiffs and United engaged in settlement discussions with the Tenants.  (Id., ¶ 8; Demo Decl., ¶ 2, Exs. 6-8.)  On November 25, 2008, Plaintiffs' coverage counsel, David B.A. Demo, wrote to Mr. Heath and to Defendants concerning the Tenants' expected settlement demand of $800,000.  (Demo Decl., ¶ 3, Exs. 6, 7.)  Mr. Demo advised Defendants that Plaintiffs would agree to fund all but $100,000 of that amount, which would be paid by United.  (Id.)  Mr. Demo reiterated Plaintiffs' reservation of rights, stated Plaintiffs' belief that the settlement demand was reasonable, and requested that Defendants consent to the settlement.  (Id.)

The Tenants ultimately submitted a demand of $802,500 against Defendants. Defendants liability insurers agreed to fund that sum as follows:  TBIC would pay $400,000, FFIC would pay $300,000, and United would pay $102,500.  (Creighan Decl., ¶ 9.)  Mr. Demo wrote Defendants and their personal coverage attorney, Mr. Heath, on December 10, 2008, again setting forth Plaintiffs' reimbursement rights and offering Defendants the choice of taking over their own defense if they did not consent to the settlement.  (Demo Decl., ¶ 4, Ex. 8.)

Mr. Wertz, appointed panel counsel, reported to Plaintiffs that he believed the settlement was reasonable in light of Defendants' potential exposure.  (Creighan Decl., ¶ 10; Demo Decl., ¶ 6.)  Defendants disagreed with Mr. Wertz' assessment of their potential liability. (Demo Decl., ¶ 5, Ex. 9.)  Plaintiffs allege that Defendants, through their counsel Mr. Heath, did agree to follow Mr. Wertz's recommendation as to whether it was reasonable to settle Tenants' claims for $800,000.  (Id., ¶ 7.)  Defendants dispute this allegation.

In December 2008 or January 2009, Plaintiffs learned that Defendants had replaced their personal coverage counsel, Mr. Heath, with new coverage counsel - Alexander J. Berline. (Id., ¶ 9.)  In January 2009, Mr. Berline sent Mr. Demo an email objecting to the $802,500 settlement as "unreasonable."  (Id.)  Mr. Demo responded to Mr. Berline on January 16, 2009, stating that Plaintiffs "hereby again offer your clients the option of promptly assuming their own defense in this matter," and "[s]hould your clients elect to assume their own defense, my clients will not move forward with any further efforts to settle the case for $802,500 as proposed, my clients will withdraw from their participation in funding the continued defense of your clients, and my clients will be relieved of any further obligations to either defend or indemnify your clients in this matter."  (Id., Ex. 11.)

On January 21, 2009, Mr. Berline responded by stating that Mr. Wertz's opinion regarding the reasonableness of the settlement should be disregarded, as Defendants should have been assigned independent Cumis counsel pursuant to California Civil Code § 2860.  (Id., Ex. 12.)  In addition, Mr. Berline objected to Plaintiffs' assertion that, should Defendants reject the settlement offer and assume their own defense, Plaintiffs would be relieved of any further obligation to indemnify Defendants.  (Id.)  Lastly, Mr. Berline stated:

> The insureds, having objected to the settlement as being unreasonable and too high, stand ready to take over their own defense - but only if (1) TBIC and FFIC expressly drop their erroneous reservation that the insureds' objection to the settlement somehow "relieves" the insurers of their obligation to "indemnify" (i.e. voids the policy), and (2) offer some reasonable compensation to insureds who will now have to hire independent counsel to review and/or re-do the work conflicted panel defense performed.

(Id.)

### D.   SETTLEMENT OF THE UNDERLYING ACTION

The Underlying Action was certified as a class and ultimately settled for over $1 million, despite Defendants' objections.  On March 25, 2009, following a motion for preliminary approval of the class action settlement, the court in the Underlying Action approved the settlement.  (Id., Ex. 15.)  In June 2009, the Tenants filed a motion for final approval of the class action settlement, which was granted on July 10, 2009 without objection

from any party.  (Id., Ex. 17.)  The underlying court "specifically [found] that the settlement is fair, reasonable, and adequate."  (Id.)

Pursuant to the underlying court's order, the settlement was divided as follows: (1) $470,599.26 to be paid to class members, with members receiving approximately $5 per day of residence at the Auburn Hotel during the class period; (2) $135,000 to the nine class representatives; (3) $333,333.33 to Tenants' counsel for attorney's fees; (4) $26,067.41 to Tenants' counsel for past costs; and (5) $35,000 to Tenants' counsel for the cost of administering the settlement.  (Id.)  TBIC contributed $400,000 and FFIC contributed $300,000 to the total settlement fund.  (Creighan Decl., ¶ 11.)  The remainder was paid by the co-defendant in the Underlying Action, Nikita Holdings, LLC.  (Pls.' RJN, Exs. 15-17.)

Of that total settlement amount, Plaintiffs allege in their motion – without reference to any supporting evidence or declaration – that Plaintiffs' combined share of the $605,599.26 paid to the class members and representatives (i.e., $470,599.26 plus $135,000) was "$423,919.482."  (Pls.' Motion at 14.)  Plaintiffs further indicate that they collectively paid $79,655.16 in defense of the Underlying Action.  (Creighan Decl., ¶ 12.)

**E.    THE INSTANT ACTION**

Plaintiffs filed this action on January 29, 2009.  In their First Amended Complaint, filed on March 25, 2009, Plaintiffs bring claims for Equitable Indemnity (First Cause of Action), Reimbursement of Defense Costs (Second Cause of Action), Reimbursement of Indemnity/Settlement Costs (Third Cause of Action), and Declaratory Relief (Fourth Cause of Action).  In short, Plaintiffs seek reimbursement of defense costs and indemnity/settlement payments incurred on Defendants' behalf in the Underlying Action, as well as declaratory relief regarding those issues.  Plaintiffs now move for summary judgment or partial summary judgment on their claims.[1]

---

[1] As indicated, Plaintiffs' First Cause of Action is for Equitable Indemnity.  By that claim, Plaintiffs seek indemnification "for any and all amounts that have been … paid by [Plaintiffs] for the defense and/or settlement of the Underlying Action," under the theory that Plaintiffs were not "in any way primarily liable for [Defendants'] defense expenses."  (First Am. Compl. at 5.)

1  II.      **LEGAL STANDARDS**

2        A.      **SUMMARY JUDGMENT STANDARD**

3        Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if

4  there is no genuine issue as to any material fact and the moving party is entitled to judgment as

5  a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The

6  moving party bears the initial burden of demonstrating the basis for the motion and identifying

7  the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions

8  on file that establish the absence of a triable issue of material fact.  Celotex Corp. v. Catrett,

9  477 U.S. 317, 323 (1986).  If the moving party meets this initial burden, the burden then shifts

10  to the non-moving party to present specific facts showing that there is a genuine issue for trial.

11  Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio

12  Corp., 475 U.S. 574, 586-87 (1986).

13        "On a motion for summary judgment, 'facts must be viewed in the light most favorable

14  to the nonmoving party only if there is a 'genuine' dispute as to those facts.'"  Ricci v.

15  DeStefano, -- U.S. --, 129 S.Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380

16  (2007)).  An issue of fact is "material" if, under the substantive law of the case, resolution of

17  the factual dispute might affect the outcome of the claim.  See Anderson, 477 U.S. at 248.

18  Factual disputes are genuine if they "properly can be resolved in favor of either party." Id. at

19  250.  Accordingly, a genuine issue for trial exists if the non-movant presents evidence from

20  which a reasonable jury, viewing the evidence in the light most favorable to that party, could

21  resolve the material issue in his or her favor.  Id.  "If the evidence is merely colorable, or is not

22  significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations

23  omitted).  Only admissible evidence may be considered in ruling on a motion for motion for

24  summary judgment.  Fed.R.Civ.P. 56(e); Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir.

25  2002).

26        B.      **AN INSURER'S DUTY TO DEFEND**

27        An insurer must defend its insured against claims that create a potential for indemnity

28  under the policy.  Scottsdale Ins. Co. v. MV Transp., 36 Cal.4th 643, 654 (2005) (citing

Montrose Chemical Corp. v. Superior Court, 6 Cal.4th 287 (1993)).  The duty to defend is broader than the duty to indemnify.  Id.  Determination of the duty to defend depends, first, on a comparison between the allegations of the complaint and the terms of the policy.  Id.  But the duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered.  Id.  "Moreover, that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability."  Id. (citing Gray v. Zurich Ins. Co., 65 Cal.2d 263, 275-276 (1966)).

The duty to defend arises upon tender of a potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage.  Id. at 655.  "When the duty, having arisen, is extinguished by a showing that no claim can in fact be covered, 'it is extinguished only prospectively and not retroactively.'"  Id. (quoting Buss v. Superior Court, 16 Cal.4th 35, 46 (1997)).  By contrast, "in an action wherein none of the claims is even potentially covered because it does not even possibly embrace any triggering harm of the specified sort within the policy period caused by an included occurrence, the insurer does not have a duty to defend."  Id.

## C.   AN INSURER'S RIGHT TO REIMBURSEMENT FOR DEFENSE COSTS INCURRED IN DEFENDING CLAIMS WITH NO POTENTIAL FOR COVERAGE

In a "mixed" action against an insured, in which some of the claims are at least potentially covered under the policy and the others are not, the insurer has a duty to defend the action in its entirety.  Buss, 16 Cal.4th at 47-48.  However, an insurer has an implied-in-law right to seek reimbursement from the insured for defense costs incurred solely in defense of claims for which there was no potential for coverage under the policy, if the insurer defends under a "reservation of rights."  Id. at 52.

"Through reservation, the insurer gives the insured notice of how it will, or at least may, proceed and thereby provides it an opportunity to take any steps that it may deem reasonable or necessary in response – including whether to accept defense at the insurer's hands and under the insurer's control … or, instead, to defend itself as it chooses."  Id. at 61, n. 27.  A

reservation of rights to recover defense costs is effective even when an insured objects to the reservation but accepts the defense.  Blue Ridge Ins. Co. v. Jacobsen, 25 Cal.4th 489, 498 (2001).  The insurer carries the burden of proof to show, by a preponderance of the evidence, that it is entitled to reimbursement of defense costs.  Buss, 16 Cal.4th at 53.

### D.   AN INSURER'S RIGHT TO REIMBURSEMENT OF SETTLEMENT PAYMENTS MADE FOR NON-COVERED CLAIMS

Insurers have a quasi-contractual right to seek reimbursement for settlement payments made for claims not covered by the policy.  Blue Ridge, 25 Cal.4th at 503.  Specifically, an insurer may settle a third party action within policy limits, even over the insured's objection, and then obtain reimbursement of its reasonable settlement payments from the insured upon a later determination that the underlying claims were not covered.  Scottsdale Ins. Co. v. MV Transp., 36 Cal.4th 643, 660 n.5 (2005).[2]

In order to perfect its right to reimbursement, an insurer must provide the insured with: (1) a timely and express reservation of rights; (2) an express notification of the insurer's intent to accept a proposed settlement offer; and (3) an express offer that the insured may assume its own defense when the insurer and insured disagree whether to accept the proposed settlement.  Blue Ridge, 25 Cal.4th at 502.  If these requirements are met, the insurer has an implied-in-law right to reimbursement for reasonable settlement payments on non-covered claims, even over the insured's objection.  Id. at 503.

## III.   DISCUSSION

### A.   PLAINTIFFS' CLAIM FOR REIMBURSEMENT OF ALL DEFENSE COSTS

By their motion, Plaintiffs seek an order that they are entitled to reimbursement of all defense costs incurred on Defendants' behalf because, accordingly to Plaintiffs, none of the Tenants' claims was potentially covered under the Policies.

---

[2] The Scottsdale court provided the following rationale for allowing reimbursement of settlement payments for non-covered claims:  "because an insurer risks unlimited exposure to bad faith liability if it declines a reasonable offer within policy limits on grounds that there is no coverage … an insured's refusal to authorize the settlement unless the insurer agreed to forgo reimbursement would place the insurer in a Catch-22 and force it to indemnify uncovered claims, contrary to its contractual obligations."  Id.

1   The evidence confirms that Plaintiffs properly reserved their rights to seek

2   reimbursement of defense costs under <u>Buss</u>.  Specifically, Plaintiffs conditioned their proffer of

3   defense on the reservation of their rights to seek reimbursement of costs advanced to defend

4   claims that were not potentially covered.  (<u>See</u> Creighan Decl., ¶ 5, Ex. 5 at 13.)  However, as

5   to Plaintiffs' claim for recovery of all defense costs, under <u>Buss</u>, Plaintiffs are only allowed to

6   reimbursement for defense costs incurred solely in defense of claims for which there was no

7   potential for coverage.

8   Here, Plaintiffs have failed to show the lack of <u>potential</u> coverage for the "Habitability

9   Tort" claim (Second Cause of Action) in the Underlying Action.[3]  In fact, Plaintiffs conceded

10  in their June 25, 2008 reservation of rights letter that there was a potential for coverage under

11  the Tenant's Habitability Tort claim:  "the only potential indemnity that might be owed to you

12  under the policies in this litigation is in connection with the damages claimed for 'Habitability'

13  (i.e., Plaintiffs (sic) inability to have full access to those rented premises)."  (Creighan Decl.,

14  Ex. 5 at 11.)  Plaintiffs admit in their motion that they provided a defense because there was a

15  possibility that the Tenants could amend their complaint to allege a cause of action for

16  wrongful eviction.  (Pls.' Mtn. at 10.)  (As discussed below, the Tenants' "Habitability Tort"

17  claim, as plead, did not state a claim for wrongful eviction.  In addition, the Tenants never

18  amended their complaint to include such a claim.)  Plaintiffs' understanding of their duty to

19  defend was consistent with <u>Scottsdale</u>, which holds "that the precise causes of action pled by

20  the third-party complaint may fall outside policy coverage does not excuse the duty to defend

21  where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could

22  fairly be amended to state a covered liability."  <u>Scottsdale</u>, 36 Cal.4th at 654.

23  Accordingly, the Court finds that Plaintiffs are entitled to recover defense costs paid in

24  defense of all claims except for the Habitability Tort claim, to the extent that such costs can be

25  allocated.  However, Plaintiffs have failed to offer any proof as to what portion of defense costs

26  were spent on the remaining claims, which precludes summary judgment on allocation issues.

27

28

---

[3]Other than the Habitability Tort claim, Defendants do not assert that any of the Tenants' other causes of action was potentially covered.

1   Therefore, as indicated below, this matter is referred to the Chief Magistrate Judge for a

2   determination of the amount of defense costs, if any, that can be allocated to the defense of all

3   claims other than the Habitability Tort claim.

4        **B.**     **PLAINTIFFS' CLAIM FOR REIMBURSEMENT OF ALL ATTORNEY'S FEES AND**

5                **COSTS PAID TO THE TENANTS AS PART OF THE SETTLEMENT**

6        Apart from the defense costs Plaintiffs incurred on behalf of Defendants, Plaintiffs have

7   also moved for recovery of all attorneys' fees and costs Plaintiffs paid <u>to the Tenants</u> as part of

8   the settlement in the Underlying Action.

9        The Tenants in the Underlying Action sought attorney's fees and costs under California

10   Civil Code Section 1942.4 (collection of rent where defective conditions exist) (Fifth Cause of

11   Action) and pursuant to the private attorney general provision of California Code of Civil

12   Procedure Section 1021.5.  (Pls.' RJN, Ex. 14 at 15.)  Section 1942.4(b)(2) provides that a

13   "prevailing party shall be entitled to recovery of reasonable attorney's fees and costs of the suit

14   in an amount fixed by the court."  Cal. Civ. Code § 1942.4(b)(2).  Likewise, Section 1021.5

15   allows a court to "award attorneys' fees to a successful party against one or more opposing

16   parties in any action which has resulted in the enforcement of an important right affecting the

17   public interest …."  Cal. Code Civ. P. § 1021.5.

18        In the Underlying Action, the court's order finally approving the settlement awarded the

19   Tenants a total of $394,400.74 in attorney's fees and costs.  The court specifically found the

20   attorney's fees award ($333,333.33), which constituted one-third of the total settlement, to be

21   "reasonable."  (Pls.' RJN, Ex. 17 at 4.)  However, the court did not indicate the statutory

22   authority or cause of action under which fees and costs were being awarded.  Plaintiffs

23   represent that they paid $276,080.52 of the attorney's fees and costs award, for which they now

24   seek complete reimbursement.

25        Plaintiffs argue that complete reimbursement is appropriate because, pursuant to the

26   Policies, the attorney's fees and costs awarded to the Tenants are only covered by the policy if

27   those fees and costs stem from potentially covered causes of action.  <u>See also</u> <u>State Farm</u>

28   <u>General Ins. Co. v. Mintarsih</u>, 175 Cal.App.4th 274, 284-285 (2009) (insurer had no obligation

to pay attorney's fees and costs awarded against the insured arising solely from claims that were not potentially covered).  Again, Plaintiffs argue that no claims were potentially covered, which, as indicated above, is incorrect as to the Habitability Tort claim.  Moreover, as with their claim for reimbursement of defense costs, Plaintiffs have failed to show what portion of the attorney's fees and costs, if any, stem from claims that had no potential for coverage (i.e., all claims except for the Habitability Tort claim).

Accordingly, the Court finds that Plaintiffs are entitled to recover attorney's fees and costs, if any, that stem from claims other than the Habitability Tort claim, to the extent such attorney's fees and costs can be allocated.

C. **PLAINTIFFS' CLAIM FOR REIMBURSEMENT OF THE REMAINDER OF THE SETTLEMENT AMOUNT (I.E., THE AMOUNT EXCLUDING THE TENANTS' ATTORNEY'S FEES AND COSTS)**

As to the remainder of the settlement amount, Plaintiffs seek an order that they are entitled, under Blue Ridge, to reimbursement of the entirety of that amount because none of the Tenants' claims was actually covered under the Policies.  Furthermore, Plaintiffs contend that they satisfied the notification requirements set forth in Blue Ridge by:  providing Defendants with timely notice that they were providing a defense under a reservation or rights; by notifying Defendants, in writing, that they intended to accept the Tenants' settlement offer; and by offering Defendants the option of rejecting the settlement offer and assuming their own defense.  (Demo Decl., ¶ 3, Exs. 6-8, 11.)

In their opposition, Defendants argue that Plaintiffs are not entitled to reimbursement for any settlement amounts because: (1) Plaintiffs did not make a valid offer to Defendants to assume their own defense because Plaintiffs stated that, should Defendants assume their own defense, Plaintiffs would be relieved of any further obligations to either defend or indemnify Defendants; (2) Defendants accepted the offer to assume their own defense; and (3) the settlement amount was unreasonable.

The parties' respective arguments are addressed in turn below.

1.     **None of the Tenants' Claims Was Actually Covered by the Policies**

The interpretation of the meaning of an insurance policy and the scope of coverage are questions of law.  Barnett v. Fireman's Fund Ins. Co., 90 Cal.App.4th 500, 508 (2001). Whether a third party action asserts a potentially covered claim under the policy requires a court to interpret the language of the insuring agreement and is a question of law.  Id.  Where the provisions of the policy are clear, the language must be read accordingly.  Buss, 16 Cal.4th at 45.

Here, the parties do not assert that the policy language is ambiguous.  The Policies plainly provide liability coverage under: Coverage A, for those sums that Defendants become legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence," which is defined as an "accident"; and Coverage B, for those sums that Defendants become legally obligated to pay as damages because of "personal and advertising injury" arising out of a list of offenses that includes "wrongful eviction."  When comparing the allegations of the underlying complaint with the terms of the Policies, it becomes clear that none of the Tenant's claims was actually covered under the Policies.

a)     ***The Tenants' First Through Fifth Causes of Action***

By their First through Fifth causes of action, the Tenants allege that Defendants willfully failed and/or refused to correct various defective conditions at the Auburn Hotel, thereby causing the Tenants to suffer damages in overpaid rent, to lose full use of the premises, and to suffer annoyance and discomfort.[4]  (Pls.' RJN, Ex. 14 at 5-11.)

These claims do not fall under Coverage A because they do not allege either "bodily injury" or "property damage," as those terms are defined in the Policies.  Moreover, those claims do not arise from an "occurrence," which is defined as an "accident."  An "accident" is an unintentional, unexpected, chance occurrence.  Modern Devel. Co. v. Navigators Ins. Co., 111 Cal.App.4th 932, 940, n. 4 (2003).  The Tenants alleged that Defendants purposefully

---

4 These claims are: (1) Breach of Implied Warranty of Habitability; (2) Habitability Tort; (3) Nuisance; (4) Breach of Implied Covenant of Quiet Enjoyment; and (5) Violation of Civil Code § 1942.4.

failed to repair and maintain the Auburn Hotel in a habitable condition, and knowingly continued to collect rent. Those actions are not "accidents" covered by the Policies.

With respect to Coverage B (personal and advertising injury liability), Defendants argue that the Tenants' Habitability Tort claim is one for "constructive eviction."[5] According to Defendants, a claim for constructive eviction falls under the Policies' definitions of "personal and advertising injury," which include "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor."

By their Habitability Tort claim, the Tenants allege that due to Defendants' failure to repair and maintain the property, the Tenants "lost and continue to lose full use of the premises." (Pls.' RJN, Ex. 14 at 7-8.) However, other than alleging that some, but not all, of the named plaintiff Tenants no longer reside at the Auburn Hotel, the Tenants did not allege that any named plaintiff was dispossessed of or vacated the property due to Defendants' actions. "In order that there be a constructive eviction it is essential that the tenant should vacate the property. There is no constructive eviction if the tenant continues in possession of the premises however much he may be disturbed in the beneficial enjoyment." Cunningham, 98 Cal.App.4th at 1152. Therefore, Defendants' characterization of this claim as one for constructive eviction fails.

Accordingly, the Tenants' First through Fifth causes of action are not covered by the Policies.

### b) The Tenants' Sixth and Seventh Causes of Action

The Tenants' Sixth and Seventh Causes of Action for Negligence and Negligent Violation of Statutory Duty, which are also not covered, rely almost entirely on the previously stated allegations in the complaint. As to Coverage A, no "bodily injury," "property damage," or covered "occurrence" was alleged by the Tenants by these claims. As to Coverage B,

---

[5] A wrongful eviction claim can encompass a wrongful "constructive eviction." Cunningham v. Universal Underwriters, 98 Cal.App.4th 1141, 1152 (2002).

1    "negligence" is not an offense listed in the definition of "personal and advertising injury."  Of

2    note, Defendants have not argued that these causes of action are covered under the Policies.

3                    c)        *The Tenants' Eighth Through Tenth Causes of Action*

4         The Tenants' Eighth, Ninth, and Tenth Causes of Action seek only equitable relief, i.e.,

5    a temporary restraining order, preliminary injunction, and permanent injunction (Eight and

6    Ninth Causes of Action), and disgorgement of unlawfully collected rent (Tenth Cause of

7    Action).

8         A cause of action that seeks these types of equitable relief does not seek "damages" that

9    can be covered by a liability policy.  See e.g., Nationwide Ins. Co. v. King, 673 F.Supp. 384,

10   387 (S.D. Cal. 1987) (summary judgment granted in favor of insurer because underlying action

11   sought only equitable relief and the policy limited coverage to damages); Bank of the West v.

12   Superior Court, 2 Cal.4th 1254, 1266 (1992) (provisions of a comprehensive liability policy

13   that covered "damages" did not extend to claims for disgorgement or restitution).  In this case,

14   because the Polices only provide coverage for suits seeking "damages," the Eighth through

15   Tenth Causes of Action cannot give rise to coverage.  Again, Defendants have offered no

16   argument to the contrary.

17        In sum, the undisputed facts show that none of the Tenant's claims in the Underlying

18   Action was covered under the Policies.

19                2.        **Plaintiffs Provided a Valid Blue Ridge Offer to Defendants to**

20                          **Assume Their Own Defense**

21        Defendants assert that Plaintiffs' offer to Defendants to assume their own defense was

22   invalid because it added an "unreasonable additional penalty" that Plaintiffs "will be relieved

23   of any further obligations to  … indemnify [Defendants] in this matter."  (See Demo Decl., Ex.

24   11 at 3.)  This offer was invalid under Blue Ridge, Defendant argue, because if an insured

25   accepts the offer to take over its own defense, then the insurer is only relieved from any further

26   obligation to defend, and indemnity coverage remains unaffected.

27        It should be noted that Blue Ridge is silent as to any impact that an insured's

28   assumption of its own defense may have on indemnity coverage.  Moreover, neither party has

cited any authority that expressly states that, by assuming its own defense costs, an insured waives (or does not waive) all indemnity coverage.  Both parties only cite allegedly "analogous" case law and certain policy considerations in support of their respective positions.

Specifically, Defendants rely exclusively on Valentino v. Elliott Sav-On Gas, Inc., 201 Cal.App.3d 692 (1988).  However, Valentino is inapposite.  There, the defendant in a personal injury action had made a settlement offer pursuant to California Code of Civil Procedure § 998, which the plaintiff rejected.  Id. at 698.  The plaintiff subsequently received a jury award of less than the amount of the defendant's offer.  Id.  The appellate court found that the trial court had erred in awarding defendant its costs pursuant to Section 998 because the settlement offer also would have required the plaintiff to release the defendant, its attorneys, and its insurance carrier from all other claims, including insurance bad faith.  Id. at 698-699. [6]  Even though the facts of that case are distinguishable, Defendants argue that this situation is "analogous" because it is unreasonable to expect Defendants to give up all indemnity benefits.  However, Valentino fails to inform the instant analysis because that case did not involve any contractual obligations of the parties.

In response, Plaintiffs assert that they were not threatening to "void" the indemnity provisions, but rather were acting consistent with the principle that, when an insured tenders and accepts a defense under a liability insurance contract, it does so pursuant to the terms and conditions of that contract.  Should the insured later assume its own defense, that would constitute a withdrawal of tender and cause the insured to withdraw from benefits under both the defense and indemnity provisions of the policy.  Plaintiffs also discuss case law and certain policy provisions that promote an insurer's right to manage the defense.  See e.g., Safeco Ins. Co. v. Superior Court (McKinney), 71 Cal. App.4th 782, 787 (1999) ("When the insurer provides a defense to its insured, the insured has no right to interfere with the insurer's control of the defense.").  However, like Defendants, Plaintiffs have failed to cite any authority directly

---

[6] Under Section 998(c)(1), "if an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer."  Cal. Code Civ. P. § 998.

1  supporting their position that an insured's assumption of its own defense results in a waiver of

2  indemnity coverage.

3      Given the parties' failure to provide meaningful authority to support their respective

4  positions, the Court turns to the policy considerations underlying the <u>Blue Ridge</u> decision for

5  guidance.  In <u>Blue Ridge</u>, the court held that an insurer has an implied-in-law right of

6  reimbursement for settlement costs paid for non-covered claims in order "to avoid the insureds'

7  unjust enrichment." <u>Blue Ridge</u>, 25 Cal.4th at 503.  As noted by the <u>Blue Ridge</u> court, "[e]ven

8  if the policy's language were unclear, the hypothetical insured could not have an objectively

9  reasonable expectation that it was entitled to what would in fact be a windfall." <u>Id</u>.  In other

10  words, the court found that an insurer should be allowed to recoup payments it was not

11  contractually obligated to pay. <u>Id</u>.  Furthermore, the court held that an insurer can unilaterally

12  reserve its right to later assert non-coverage of any settled claim, even over the insured's

13  objection:  "[a]n insured's mere objection to a reservation of rights would create coverage

14  contrary to the parties' agreement in the insurance policy and violate basic notions of fairness."

15  <u>Id</u>. at 502.  In allowing for an insurer to proceed under a unilateral reservation of rights, the

16  <u>Blue Ridge</u> court noted that an insurer is "obligated to accept a reasonable settlement offer as

17  part of its duty of good faith and fair dealing or risk excess exposure." <u>Id</u>. at 504.

18      However, an insurer's right to seek reimbursement for settlement costs for non-covered

19  claims is not unbounded.  <u>Blue Ridge</u> requires, inter alia, that the insurer make an "an express

20  offer to the insureds that they may assume their own defense when the insurer and the insured

21  disagree whether to accept the proposed settlement." <u>Id</u>. at 502.  Here, in Plaintiffs' first letter

22  to Defendants explaining the settlement offer (dated December 10, 2008), Plaintiffs stated that

23  should Defendants "ultimately disagree over the terms and conditions under which the case

24  against them should be settled, they are expressly offered the option of assuming their own

25  continued defense in this matter, with FFIC not paying any further costs of that defense."

26  (Demo Decl., Ex. 8.)  Notably, in that letter, Plaintiffs did not assert that Defendants would

27  waive indemnification coverage if they assumed their own defense.  Therefore, by virtue of the

28  December 10, 2008 letter, Defendants were placed on notice, in accordance with <u>Blue Ridge</u>,

1   that Plaintiffs planned to settle the Underlying Action.  Defendants were also informed of their

2   right to assume their own defense if they disagreed with the terms of the settlement.  As such,

3   Plaintiffs satisfied the <u>Blue Ridge</u> prerequisites for seeking reimbursement of settlement

4   payments made for non-covered claims.

5          It was only in a subsequent January 16, 2009 letter, sent after Defendants' newly-

6   retained coverage counsel objected to the settlement as unreasonable, that Plaintiffs stated that

7   they would be "relieved of any further obligations to either defend of indemnify your clients in

8   this matter" should Defendants assume their own defense.  (<u>Id</u>., Ex. 11.)  However, at that

9   point, Plaintiffs had already discharged their obligations under <u>Blue Ridge</u>.  In addition, if this

10  Court were to find that the January 16, 2009 letter effectively "negated" Plaintiffs' prior <u>Blue</u>

11  <u>Ridge</u> notice, such a finding would lead to the unjust enrichment of Defendants, by allowing

12  them to benefit from a level of coverage for which they did not pay premiums.

13         Accordingly, the submitted evidence shows that Plaintiffs sufficiently reserved their

14  rights for reimbursement of settlement payments made for non-covered claims.

15                   **3.      The Evidence Shows that Defendants Did Not Assume Their Own**

16                            **Defense**

17         Defendants further argue that the settlement was improper because they did, in fact,

18  assume their own defense.  This argument is unsupported by the submitted evidence.  In their

19  correspondence, Defendants informed Plaintiffs that they "<u>stand ready</u> to take over their own

20  defense - <u>but only if</u> : (1) TBIC and FFIC expressly drop their erroneous reservation that the

21  insureds' objection to the settlement somehow 'relieves' the insurers of their obligation to

22  'indemnify' (i.e. voids the policy), and (2) offer some reasonable compensation to insureds

23  who will now have to hire independent counsel to review and/or re-do the work conflicted

24  panel defense performed."  (Demo Decl., Ex. 12) (emphasis added).  Because Defendants

25  imposed conditions that had to be met (and were, in fact, not met) before they would take over

26  their defense, Defendants never did agree to "assume their own defense" within the meaning of

27  <u>Blue Ridge</u>.  Moreover, Defendants have not produced any evidence showing that they

28

1   attempted to substitute Mr. Berline or some other counsel in Mr. Wertz' stead, to cause Mr.

2   Wertz' withdrawal, or to take some other affirmative action in their own defense.

3       In support of their position, Defendants argue simply that these provisos are not actually

4   "conditions" because they were legally entitled to receive indemnity payments and the

5   appointment of independent <u>Cumis</u> counsel.  However, the fact remains that Defendants did not

6   actually assume their own defense so as to preclude Plaintiffs' recovery of settlement

7   amounts.[7]

8               **4.**      **Defendants Have Failed To Show that the Settlement Amount Was**

9                       **Unreasonable**

10       Lastly, Defendants attempt to create a factual issue regarding the reasonableness of the

11   settlement amount paid by Plaintiffs in the Underlying Action.  In doing so, Defendants submit

12   a declaration from their former lawyer, Mr. Heath, disputing Plaintiffs' assertion that he agreed

13   to the reasonableness of the settlement amount.  (Heath Decl., ¶¶ 5-7, Ex. 9.)  This only

14   reiterates Defendants already-stated position, expressed to Plaintiffs by Mr. Berline, that the

15   settlement was unreasonable.  (<u>See</u> Demo Decl., ¶ 9.)  Defendants' position does not

16   demonstrate that the settlement was objectively unreasonable.  Indeed, in the Underlying

17   Action, the state court found that the settlement was reasonable, fair, and accurate.  As such,

18   Defendants have failed to show that there is a genuine issue of material fact as to the

19   reasonableness of the settlement amount.

20       In view of the above, this Court finds that Plaintiffs are entitled to reimbursement of all

21   settlement payments (other than those paid as attorney's fees and costs, which are subject to the

22   analysis in Section III.B above) made in the Underlying Action.  But again, Plaintiffs have not

23   provided an allocation of such settlement payments.

24       **D.**      **PLAINTIFFS' CLAIM FOR PREJUDGMENT INTEREST**

25       Plaintiffs argue that they are entitled to an award of prejudgment interest against

26   Defendants.  However, prejudgment interest is only appropriate where damages are certain or

27   

28         [7] Other than Mr. Berline's assertion to Plaintiffs that Defendants should have been assigned independent <u>Cumis</u> counsel, Defendants have failed to submit any evidence showing that they actually requested <u>Cumis</u> counsel under California Civil Code § 2860.

capable of calculation on a particular day.  Cal. Civ. Code § 3287(a).  Here, the amount of damages is not certain because Plaintiffs have yet to prove the amount of defense costs and settlement payments that they are entitled to recover.  Accordingly, this request is denied, without prejudice.

**IV.    CONCLUSION**

For the foregoing reasons,

IT IS HEREBY ORDERED THAT:

1.      Plaintiffs' Motion for Summary Judgment on their claim for Reimbursement of Defense Costs IS GRANTED IN PART.  To the extent they can be allocated, Plaintiffs are entitled to recover defense costs, if any, incurred in the Underlying Action in defense of all claims other than the Habitability Tort claim.

2.      Plaintiffs' Motion for Summary Judgment for Reimbursement of Indemnity/Settlement Costs paid as attorney's fees and costs to the Tenants in the Underlying Action is GRANTED IN PART.  To the extent they can be allocated, Plaintiffs are entitled to recover attorney's fees and costs, if any, that stem from all claims other than the Habitability Tort claim.

3.      Plaintiffs' Motion for Summary Judgment on their claim for Reimbursement of Indemnity/Settlement Costs – other than those paid as attorney's fees and costs – is GRANTED.  Plaintiffs are entitled to recover all indemnity/settlement costs (other than those paid as attorney's fees and costs) incurred in the Underlying Action.

4.      This matter is REFERRED to the Chief Magistrate Judge or her designee for further proceedings regarding the allocation of the above-indicated amounts, and a report and recommendation regarding the same.

5.      Before appearing before the Magistrate Judge, the parties are directed to meet and confer in an effort to reach a stipulation as to the above-indicated amounts.

6.       Plaintiffs' request for prejudgment interest is DENIED without prejudice.  Plaintiffs may reassert this request before the Magistrate Judge, at which point the Magistrate Judge shall provide a report and recommendation on the issue of prejudgment interest.

1    7.    This Order terminates Docket No. 49.

2    IT IS SO ORDERED.

3    Dated: September 23, 2010

4    _____
     SAUNDRA BROWN ARMSTRONG
     United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28